UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSEPH GEENE ROACH,

   Plaintiff,

 v.              CAUSE NO. 3:21-CV-371-DRL-MGG

INDIANA DEPT OF CORRECTION *et al.*,

   Defendants.

OPINION AND ORDER

Joseph Geene Roach, a prisoner without a lawyer, filed a complaint. ECF 1. A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(internal quotation marks and citation omitted). A plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Mr. Roach was initially hired as a plumber in the mechanical maintenance department of the Indiana State Prison (ISP). The woman who hired him did not have approval to do so from the Warden, so he was removed from the job. However, when Mr. Roach addressed the issue with "Mayor,"[1] he was reinstated. ECF 1 at 2. Sometime during his tenure there, Glenn Handzlik was hired as the plant manager. When questioned by Mr. Roach, Mr. Handzlik told him he was not going to help him attain an apprenticeship for a "Goal B worktrade," so Mr. Roach switched to welding. *Id*. After completing many hours of welding, Mr. Roach experienced breathing trouble because of the lack of ventilation in the welding area. The prison doctors told him to discontinue welding; and, after a few weeks, he was allowed to return to work in the mechanical maintenance department at the "Jeff Sign Shop" instead *Id*. at 3.

While there, he saw a supervisor named Jeff molesting an inmate, but he pretended not to notice. During this time period, other inmates were stealing his tools and attempting to get him fired. He asked Mr. Handzlik for help, but he was not given any assistance. According to Mr. Roach, Mr. Handzlik "sent [him] in for two week[s] for being polite to a lady downstate that oversees Pen Products." *Id*. at 3–4. After being disciplined for the incident, Mr. Handlzik would not allow him to return to welding

---

[1] The court assumes Mr. Roach is referring to the defendant John Meyers, as neither "Mayor" nor John Meyers are referenced anywhere else in the complaint.

though he had been cleared by the doctors to do so. Mr. Roach confronted the other inmates that were trying to get him fired by stealing his tools, and he was moved to the shipping department to "powder coat" as a result. *Id*. at 4.

On November 2, 2019, Mr. Roach was informed by another inmate that Mr. Handlzik wanted him to "power wash pants," so he did. *Id*. On November 5, 2019, he received a medical pass to get bloodwork done. When he returned to work afterwards, he was told he was "fired for no reason. Then I was told because I power washed the pants on Friday." *Id*. at 4–5.

Mr. Roach claims he has accrued over 4,000 hours on his apprenticeship during his time working for Pen Products/ICI, and only 3,000 hours were required to graduate. He states, "I was promised a certificate from the Department of Labor for when I go home to get a good job on the streets," but he has been informed he is not going to get his certificate as promised or the six-month time cut associated with it now that he has been terminated. *Id*. at 5.

Mr. Roach has sued the Indiana Department of Correction, Pen Products/ICI, Glenn Handzlik, and John Meyers for "hours and pay and timecut and reimbursed for all my college time and money and also reimbursed for mental and physical damages also." *Id*. at 9.

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. That said, "[t]he Constitution does not give prisoners any substantive entitlements to prison employment." *Soule v. Potts*, 676 Fed. Appx. 585, 586 (7th Cir. 2017) (citing *DeWalt*

3

*v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (2020); *Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir. 1991) (en banc)). Moreover, because a prisoner does not have a liberty or property interest in a prison job, a deprivation of that job does not violate any procedural due process rights. *DeWalt*, 224 F.3d at 613. Due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The loss of a prison job does not meet that high standard. *See Hoskins v. Lenear*, 395 F.3d 372, 374–75 (7th Cir. 2005) (prisoner not entitled to process for discipline of two months in segregation, the loss of prison job, the loss of privileges, and a transfer); *see also Cochran v. Buss*, 381 F.3d 637, 641 (7th Cir. 2004) (claims that inmate "lost his preferred prison living arrangement, his prison job and his eligibility for rehabilitative programs and that the disciplinary report has damaged his prison record" were not significant enough to trigger due process concerns). Therefore, to the extent Mr. Roach claims his rights were violated by the loss of his job, he has not stated a claim.

With regard to the "promised" six-month time cut Mr. Roach was informed he would not receive, termination from a prison job may constitute a deprivation of a protected liberty interest if the termination "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 487. However, "inevitably" is a strong word. Though a state may create such a liberty interest, there is no due process protection for action that "might merely affect the duration of the sentence." *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (quoting *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996)). In *Zimmerman*, the

4

court rejected an inmate's claim that Indiana Code § 35–50–6–3.3, which grants an inmate credit time for successfully completing various educational programs, created a liberty interest. *Id*. at 571–72. In relevant part, that statute provides:

> a person *may* earn educational credit if, while confined by the department of correction, the person: . . . demonstrates a pattern consistent with rehabilitation; and . . . successfully completes requirements . . . [t]o obtain a certificate of completion of a career and technical or vocational education program approved by the department of correction.

Ind. Code. § 35-50-6-3.3(b) (emphasis added). Due to the discretionary nature of the statute, the court found that, though the inmate alleged he "would" have received good time credits if he had been allowed to participate in the program, it was "not inevitable" that he would successfully complete it, so there was no due process violation. *Zimmerman*, 226 F.3d at 572. In other words, the time credit associated with the completion of educational or vocational programs is a state-created right, and any concept of liberty attaches to such credits only when the state creates them and, if discretionary, actually grants them. *See Pryor v. Brennan*, 914 F.2d 921, 927 (7th Cir. 1990) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)).

Mr. Roach alleges he never received his certificate or the time credit associated with it. Although he claims he completed 4,000 hours towards his apprenticeship when only 3,000 hours were necessary, time spent in the program was not the only factor to be considered. The statute—which is discretionary in nature—also includes a requirement that the inmate must demonstrate a pattern consistent with rehabilitation. Mr. Roach admits he was disciplined for various reasons during this timeframe, including communicating with the woman who oversees Pen Products, confronting the other

inmates who were allegedly stealing his tools, and power washing pants. Although Mr. Roach appears to disagree with these disciplinary measures, the fact remains that he was disciplined accordingly, and these allegations are not plausibly consistent with a pattern of rehabilitation. Thus, despite the fact that Mr. Roach alleges to have completed the hours requirement for the certificate/apprenticeship program, he has not plausibly alleged a valid liberty interest in the educational credit and time cut associated with it. *See Edwards*, 478 at 830 (plaintiff can plead himself out of court if he pleads facts that preclude relief); *McCready*, 453 F.3d at 888 (same).

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons explained, such is the case here.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED.

April 20, 2022        *s/ Damon R. Leichty*
                Judge, United States District Court